UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

**MEMORANDUM & ORDER**
16-CR-0006 (WFK)

LUIS ESCOBOSA,

       Defendant.
-----------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 31, 2016, Luis Escobosa ("Defendant") pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 87 months of incarceration, 5 years of supervised release, criminal forfeiture as described in the Plea Agreement, and payment of restitution and a $100.00 special assessment.

## BACKGROUND

On September 23, 2015, the United States filed a Complaint against Defendant, alleging he knowingly received and distributed visual depictions that involved the use of one or more minors engaging in sexually explicit conduct. *See* Compl. at 1, ECF No. 1. On January 6, 2016, the United States indicted Defendant on two counts: (1) receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and (2) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). *See* Indictment ¶¶ 1-2, ECF No. 13. On October 31, 2016, Defendant pleaded guilty to Count Two of the Indictment pursuant to a Plea Agreement. *See* Plea Agreement ¶ 1, ECF No. 27.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## DISCUSSION

### I. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### A. The History and Characteristics of the Defendant

Defendant, currently age twenty-nine, was born on September 27, 1987, in Staten Island, New York. *See* Presentence Investigation Report ("PSR") ¶ 55, ECF No. 38. At the time of Defendant's birth, his parents were married but separated, and they divorced shortly thereafter. *Id.* ¶¶ 55-56. Defendant has never had a relationship with his father, but he is close with his mother and step-father, whom she married in 1994. *Id.* ¶¶ 56-57. Although Defendant was

raised under modest economic circumstances, his mother and step-father always provided basic necessities for the household. *Id.* ¶ 56. Defendant described his upbringing as "stable and happy" and reported no history of abuse. *Id.*

From 2001 to 2005, Defendant attended Tottenville High School in Staten Island. *Id.* ¶ 72. Although he voluntarily withdrew before graduating, he subsequently received his high school diploma in 2006. *Id.* From 2005 to 2013, Defendant was enrolled part-time at the College of Staten Island, majoring in psychology. *Id.* ¶ 71. He received his Associate's Degree in 2010 but remains two classes shy of earning his Bachelor of Arts degree. *Id.* From 2011 to 2012, Defendant was employed as a care giver for an autistic teenager. *Id.* ¶ 77. From 2012 to 2013, he worked as a "direct support professional" for a company that provides services for individuals with developmental disabilities. *Id.* ¶ 76. From 2014 to 2015, Defendant operated a music school franchise, of which he was the sole employee, that offered group and individual guitar lessons to children and adults. *Id.* ¶ 73.

Until he was remanded to custody in June 2017, Defendant resided with his mother and step-father in his childhood home. *Id.* ¶ 59. As will be discussed in greater detail shortly, Defendant reported that he first became interested in child pornography in 2012. *Id.* ¶ 22. In 2013, Defendant's step-father was convicted of possession of child pornography in state court and sentenced to ten years of probation. *Id.* ¶ 57. From approximately June 2015 until his arrest for the instant offense in September 2015, Defendant voluntarily attended weekly group therapy at the same facility where his step-father received sex offender therapy as mandated by his local probation officer. *Id.* ¶ 66. At the time of his arrest, Defendant was also enrolled in online computer coding classes. *Id.* ¶ 70. Defendant's mother, step-father, older sister, and girlfriend,

3

whom he began dating in 2009, are all aware of the instant offense and remain supportive. *Id.* ¶¶ 57-58, 60.

### B. The Nature and Circumstances of the Offense

Between February and March 2015, law enforcement agents acting pursuant to a U.S. District Court order monitored the electronic communications of users of "Playpen," a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography. *Id.* ¶¶ 10-11. According to data obtained from the website's logs, an individual with the username "Fraud92787" had been actively logged into the website for at least four hours and sixteen minutes between February 4, 2015, and March 3, 2015, and had accessed numerous posts containing links to images and videos of child pornography. *Id.* ¶¶ 12-13. For example, on February 27, 2015, the user "Fraud92787" accessed a post that contained a link to still images from a video of an adult male anally penetrating a prepubescent female child with his penis as well as other objects. *Id.* ¶ 17. And, on March 3, 2015, the user "Fraud92787" accessed a post that contained approximately seventy images of three prepubescent female children, approximately five to eight years old, being vaginally penetrated by an adult penis and performing oral sex on each other and on an adult penis. *Id.* ¶ 18. Using publicly available websites and subpoenaed records, FBI agents were able to determine that the user "Fraud92787" had logged into the website on at least one occasion from an internet protocol ("IP") address assigned to a household in Staten Island, New York. *Id.* ¶¶ 14, 19.

On June 30, 2015, FBI agents executed a search warrant at the Staten Island address. *Id.* ¶ 20. Defendant, a resident at the address, was present when agents executed the search warrant. *Id.* After waiving his *Miranda* rights and agreeing to speak with agents, Defendant admitted that he had been downloading and viewing child pornography since approximately 2012; was mostly

4

interested in females between the ages of fifteen and seventeen; and particularly enjoyed webcam videos featuring young females touching themselves. *Id.* ¶¶ 21-22; *cf. id.* ¶ 33 (noting Defendant expressed interest in females primarily between the ages of thirteen and fourteen during subsequent interview with his Probation Officer). He also admitted to masturbating to child pornography that depicted victims as young as thirteen years old and to downloading child pornography involving still younger children "because he was curious." *Id.* ¶ 22; *accord id.* ¶ 33 (noting Defendant admitted to viewing images of infants and toddlers during subsequent interview with his Probation Officer). In addition, Defendant told agents that he had viewed and downloaded child pornography under the username "Fraud92787" on the "Playpen" website; had used his computer to access Tor (a free internet software program that enables anonymous communication); and had approximately one hundred files containing child pornography on his computer, although he said that agents would not find them because he regularly deleted images of child pornography after viewing them. *Id.* ¶ 22; *see also id.* ¶ 33 (describing Defendant's use of Tor software).

A review of the devices recovered from Defendant's bedroom revealed the following: approximately 115 files of child pornography thumbnails; an image of a Tor browser icon; three images not containing child pornography but recognized from a known series of child pornography; folders labeled "childporn"; and a chat from "#TeenWorld." *Id.* ¶ 23. A subsequent forensic analysis of Defendant's computer revealed at least 341 images—257 of which consisted of child erotica[1]—and at least two videos of child pornography. *Id.* ¶ 26. Defendant's child pornography collection depicted female victims ranging from approximately

---

[1] Child erotica is defined as images and videos of children that include the lascivious exhibition of the genitals or pubic area. PSR ¶ 26 n.1. Defendant possessed images of children, some of whom were dressed up in costume, posing in a sexual manner. *Id.* Many of these images included close-up shots of the victims' genital areas. *Id.*

age two to age fourteen and included the following images and videos, among others: a video, over fifteen minutes in length, of a prepubescent female child, approximately ten to twelve years old, being vaginally penetrated by an erect penis, *id.* ¶ 27(a); an image of a prepubescent female child, approximately five to seven years old, being vaginally penetrated by an erect penis, *id.* ¶ 27(b); an image of a female toddler, approximately two to four years old, performing oral sex on an erect penis, *id.* ¶ 27(c); and an image of a prepubescent female child, approximately four to six years old, being vaginally penetrated by an object, *id.* ¶ 27(d).

On September 25, 2015, Defendant was released on a $150,000.00 secured bond with pretrial reporting requirements. *Id.* at 1. On October 31, 2016, Defendant pleaded guilty to one count of possession of child pornography. *Id.* ¶ 1.

On February 22, 2017, Defendant's Probation Officer submitted a Confidential Memorandum to the Court alleging, among other things, that: neither Defendant nor his step-father had reported that the step-father was the subject of a child pornography conviction during Defendant's bail hearing or meetings with Pretrial Services after Defendant's release back into the same household, *id.* ¶ 3; Defendant had been actively using an unmonitored computer in the family residence in violation of his bail conditions, *id.*; Defendant had stated during a group therapy session that he had created a website that allowed users to access child pornography for a fee and that he could bypass the monitoring software Pretrial Services had installed on his computer, *id.* ¶ 4; and, during a recent home visit, Defendant had not disputed that he was using an unmonitored computer and had made statements such as, "what did you guys expect me to do, I have been bored," *id.* The Memorandum also noted that, in light of these allegations, Pretrial Services had seized all internet capable devices in Defendant's household. *Id.* ¶ 4. After holding

a violation hearing on March 17, 2017, the Court ordered a forensic analysis of all electronic devices seized from Defendant's household and imposed additional bail conditions. *Id.* ¶ 5.

On May 26, 2017, Pretrial Services submitted a second Confidential Memorandum to the Court containing the results of the forensic analysis, which indicated that Defendant had accessed the internet in an unauthorized manner. *Id.* ¶¶ 6, 8. Specifically, the Memorandum alleged Defendant had accessed "Pirate Bay," a website for downloading illegal content such as pornography, and "Omegle," an anonymous web chat program, in violation of his bail conditions. *Id.* ¶ 6. After holding a second violation hearing on June 12, 2017, the Court remanded Defendant to custody. *Id.* ¶ 9. On July 13 and 14, 2017, the Court held additional hearings, at which Defendant's Pretrial Services Officer, a case agent from the Federal Bureau of Investigation, and Defendant testified. *Id.*

## II. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

"Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). For over three years, Defendant actively participated in such harm and debasement through his repeated consumption of child pornography. His offense is therefore serious and warrants significant punishment. The Court also finds there is a substantial need for deterrence, as Defendant's and others' possession of

7

videos and images of abuse necessarily fuels and fosters the market for more abuse. *See, e.g.*, *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming sentence of 120 months of imprisonment for receipt, distribution, and possession of child pornography where district court had observed that, "contrary to [the defendant's] contention, his crimes are not 'victimless' because they 'creat[e] a market' for child pornography and thus harm children, 'scarr[ing] [them] for life'"). Indeed, "[b]oth the State and Federal Governments have sought to suppress [child pornography] for many years, only to find it proliferating through the new medium of the Internet." *Williams*, 553 U.S. at 307.

Finally, Defendant's disregard for the law and unwillingness to reform his behavior, as evidenced by his noncompliance with his bail conditions and unauthorized access of the internet, indicates a substantial sentence is required to protect the public from further crimes of Defendant. *Cf. United States v. Melendez*, 551 F. App'x 20, 20-21 (2d Cir. 2014) (summary order) (affirming 168-month sentence for single count of possession of child pornography where the "district court found that [the defendant] showed little remorse for his actions and that he was likely to reoffend if he were released"); *United States v. Poupart*, 565 F. App'x 53, 56 (2d Cir. 2014) (summary order) (affirming 240-month sentence for possession of child pornography where, among other things, the district court "concluded that protection of the public and [the defendant's] lack of remorse warranted a 'lengthy sentence'").

### III. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), for which he faces a maximum term of imprisonment of twenty

8

years. *See id.* § 2252(b)(2). Defendant also faces a minimum term of supervised release of five years, *id.* § 3583(k); a maximum fine of $250,000.00, *id.* § 3571(b); restitution in an amount to be determined, *id.* § 3663A; forfeiture of property, *id.* § 2253; and a special assessment of $100.00, *id.* § 3013.

### IV. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2G2.2(a)(1) applies to violations of 18 U.S.C. § 2252(a)(4)(B) and sets a base offense level of eighteen. *See* U.S. Sentencing Commission, *Guidelines Manual*, § 2G2.2 (Nov. 2016) ("USSG" or "Guidelines"). Since the material possessed by Defendant included photographic images and videos of prepubescent minors and/or minors under the age of twelve, the offense level is increased by two levels. *Id.* § 2G2.2(b)(2). In addition, numerous images possessed by Defendant depicted prepubescent children being orally and/or vaginally penetrated by an erect penis and/or object. Such images are deemed to involve "the subjection of a young child to a sexual act that would have to be painful," which is "excessively cruel and hence sadistic within the meaning of" Guidelines § 2G2.2(b)(4). *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996); *see also United States v. Freeman*, 578 F.3d 142 (2d Cir. 2009) (same). Accordingly, the offense level is increased by four levels. USSG § 2G2.2(b)(4). A further two-level increase applies because Defendant used a computer to transmit child pornography, *id.* § 2G2.2(b)(6), and a final four-level increase applies because the offense involved the possession of at least 300 but fewer than 600 images of child pornography, *id.* § 2G2.2(b)(7)(C). Defendant's acceptance of responsibility by pleading guilty, however, permits a three-level

reduction. *Id.* § 3E1.1(a), (b). With these adjustments, Defendant's total offense level is twenty-seven. Because Defendant has no prior arrests or convictions, *see* PSR ¶¶ 48-53, he has a criminal history score of zero and a criminal history category of one, *see* USSG ch. 5, pt. A.

Given a total offense level of twenty-seven and a criminal history category of one, the Guidelines suggest a term of imprisonment of between seventy and eighty-seven months.[2] USSG ch. 5, pt. A. Defendant may also be sentenced to: a term of supervised release of at least five years and up to life, *id.* § 5D1.2(b)(2); a fine of between $12,500.00 and $125,000.00, *id.* § 5E1.2(c)(3); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

## V. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

## VI. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

---

[2] Although, in reliance on the Guidelines range estimated in the Plea Agreement, the Government proposed a sentence of thirty to thirty-seven months of imprisonment, it admitted during the sentencing hearing that that estimate was so low only because it had "inadvertently" failed to include several applicable enhancements. The Court, however, is not bound by the Government's mistakes. *Cf. United States v. Redeye*, 690 F. App'x 27, 28-29 (2d Cir. 2017) (summary order) (affirming sentence exceeding appeal waiver in plea agreement but within Guidelines, where, as here, "the plea agreement and colloquy made clear that the district court had the ability to calculate independently the Defendant's Guidelines range, and that the range might be higher than the parties expected"; "the sentence imposed was within the Guidelines range, so the court was not required to provide notice to the Defendant prior to sentencing"; and "the Defendant was informed that he faced a statutory maximum sentence . . . well above the [within-Guidelines] sentence" he received). Moreover, in both its sentencing letter, ECF No. 39, and during the hearing, the Government conceded that enhancements for material portraying sadistic conduct, USSG § 2G2.2(b)(4), and for possessing at least 300 images, *id.* § 2G2.2(b)(7)(C), were fully applicable to Defendant. The Court agrees, and accordingly it includes them in its calculation of the applicable Guidelines range.

For the reasons stated in this Memorandum, and considering the other six § 3553(a) factors, the Court's sentence avoids such unwarranted sentence disparities.

## VII. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is required under the Mandatory Victim Restitution Act of 1996. *Id.* § 3663A. The Government has yet to provide the loss suffered by the victims, however, so restitution cannot be determined at this time. *See* PSR ¶¶ 28-30, 97. The Court will consider any victim impact statements upon their submission.

## CONCLUSION

A sentence of 87 months of incarceration, 5 years of supervised release, criminal forfeiture as described in the Plea Agreement, and payment of restitution and the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 19, 2017
Brooklyn, New York

11